# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| TRUENORTH COMPANIES, L.C.; TRUENORTH PRINCIPALS, L.C., <br><br> Plaintiffs, <br><br> vs. <br><br> TRUNORTH WARRANTY PLANS OF NORTH AMERICA, LLC, <br><br> Defendant. | No. C17-31-LTS <br><br> **MEMORANDUM OPINION AND ORDER** |

## I.   INTRODUCTION

This case is before me on a motion (Doc. No. 50) for judgment on the pleadings on Count III (Mark Dilution) by defendant TruNorth Warranty Plans of North America, LLC (TN Warranty). Plaintiffs TrueNorth Companies, L.C., and TrueNorth Principals, L.C. (collectively TrueNorth), have filed a resistance (Doc. No. 51) and TN Warranty has filed a reply (Doc. No. 54). I find that oral argument is not necessary. *See* Local Rule 7(c).

## II.   FACTUAL AND PROCEDURAL BACKGROUND

TrueNorth filed its original complaint (Doc. No. 2) on March 28, 2017, alleging two counts of trademark infringement, one count of mark dilution, one count of false designation of origin and one count of mark infringement under Iowa law based on the parties' respective design logos:

Plaintiffs':



Defendant's:



On June 8, 2017, defendants (at that time consisting of TN Warranty and its sole member, William Eskridge) filed a motion to dismiss for lack of personal jurisdiction. *See* Doc. No. 20. I granted the motion as to defendant Eskridge and denied it as to TN Warranty. *See* Doc. No. 40.

On November 3, 2017, TrueNorth filed a motion (Doc. No. 42) to amend its complaint. Chief United States Magistrate Judge C.J. Williams granted the motion on November 27, 2017, and the amended complaint was filed that same day. *See* Doc. Nos. 43 and 44. The amended complaint alleges two new counts: Count VI for false advertising under the Lanham Act and Count VII for unfair competition under the Lanham Act and common law. The parties then submitted a joint motion (Doc. No. 47) for revised deadlines, which Judge Williams granted. *See* Doc. Nos. 47, 48. TN Warranty filed its answer (Doc. No. 49) to the amended complaint and the instant motion (Doc. No. 50) on December 21, 2017.

The following allegations from TrueNorth's amended complaint (Doc. No. 44) are relevant to Count III and TN Warranty's motion:

> 13. TrueNorth has consistently used the word "TrueNorth" and two specific logo designs in commerce in connection with its business since its inception in 2000. Specifically, TrueNorth's first use in commerce of the trade word "TrueNorth" and its logo with the "TrueNorth" name and compass design was on September 1, 2000. TrueNorth's first use in commerce of an "N" with a compass design was on November 1, 2000.
>
> 14. TrueNorth has spent considerable resources developing and utilizing its TrueNorth mark and the two logo designs. Since establishing the brand in 2001, TrueNorth has invested well over $30 million in marketing efforts to strengthen the TrueNorth brand, both locally and nationally.
>
> 15. The TrueNorth national brand is well-known and recognized in the transportation industry as a leader in insurance and financial strategies, as evidenced by TrueNorth's partnerships with some of the nation's leading motor carriers, as well as TrueNorth's work with transportation associations such as the American Trucking Association (ATA) & Truckload Carriers Association (TCA).
>
> 16. By virtue of extensive advertising and sales of its services thereunder, TrueNorth's marks have become well and favorably known to the public and have become valuable symbols of TrueNorth's business and goodwill.
>
> 17. The services provided under TrueNorth's Trademarks include, among others, the offering of insurance coverages and other specialized products and services to commercial transportation companies as well as individual drivers, most of which are related to risk reduction. Certain coverages provide protection against damage to property.

Doc. No. 44 at 3-4. TrueNorth also alleges it has three marks registered with the United States Patent and Trademark Office (USPTO). *Id.* at 4-5.

3

## III.   TRUENORTH'S PROCEDURAL OBJECTIONS

The parties disagree about whether the motion may be decided under either Rule 12(b)(6) or Rule 12(c), or whether it is procedurally barred by Rule 12(g)(2). The motion is titled as a motion "for judgment on the pleadings on Count III." Doc. No. 50. A motion for judgment on the pleadings is governed by Rule 12(c). *See* Fed. R. Civ. P. 12(c). However, TN Warranty's motion and brief both invoke Rule 12(b)(6), which addresses a motion to dismiss for failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). In its reply, TN Warranty argues that I can grant its motion under either Rule 12(b)(6) or Rule 12(c).

TrueNorth argues that the motion is procedurally improper for several reasons. First, because TN Warranty previously moved for dismissal under Rule 12(b)(2), TrueNorth argues that the present motion is precluded under Rule 12(g)(2). That rule requires parties to bring all Rule 12(b) motions together to avoid piecemeal pre-answer motions. *See* Fed. R. Civ. P. 12(g)(2) ("Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion."). Second, TrueNorth argues that I cannot enter judgment on the pleadings because the pleadings are not closed. It points out that TN Warranty did not answer the allegations pertaining to Count III but instead stated as follows:

> TNWarranty is moving to dismiss Count III for failure to state a claim pursuant to Rule 12(b)(6) such that no answer is required at this time. To the extent any of the allegations in Paragraphs 88 to 103 contain allegations of fact relevant to other counts, TNWarranty denies the allegations.

Doc. No. 49 at 21. Finally, TrueNorth argues that TN Warranty's motion is untimely because the amended complaint did not reset the time for bringing Rule 12(b) motions.

I agree that this motion is not ripe under Rule 12(c) for judgment on the pleadings, as TN Warranty expressly declined to answer the allegations set forth in Count III. Rule 12(c) states that "[a]fter the pleadings are closed but early enough not to delay trial a

4

party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). As to Count III, the pleadings are not closed. Therefore, I must determine whether the motion may be considered under Rule 12(b)(6).

TN Warranty has already filed a motion under Rule 12(b)(2) for lack of personal jurisdiction. The amended complaint makes no changes with regard to Count III. Rule 12(g)(2) states that "[e]xcept as provided in Rule 12(h)(2) or (3), a party that makes a motion under [Rule 12] must not make another motion under [Rule 12] raising a defense or objection that was available to the party but omitted from its earlier motion." Rules 12(h)(2) and 12(h)(3) provide:

> (2) *When to Raise Others*. Failure to state a claim upon which relief can be granted, to join a person required by Rule 19(b), or to state a legal defense to a claim may be raised:
>  (A) in any pleading allowed or ordered under Rule 7(a);
>  (B) by a motion under Rule 12(c); or
>  (C) at trial.
>
> (3) *Lack of Subject-Matter Jurisdiction*. If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.

Fed. R. Civ. P. 12(h). TN Warranty's motion does not fall under either exception to successive motions under Rule 12.

While TN Warranty's motion is procedurally improper under Rule 12(c) (due to the lack of an answer to Count III) and Rule 12(b)(6) (due to the prohibition of successive motions as described in Rule 12(g)(2)), I find it would be inconsistent with the spirit of Rule 1 to deny the motion on these grounds. *See* Fed. R. Civ. P. 1 (stating the rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."). District courts in other jurisdictions have reached the same conclusion when faced with these circumstances:

> Rule 12(g) is designed to avoid repetitive motion practice, delay, and ambush tactics. If the Court were to evade the merits of Defendants'. . .

defenses here, Defendants would be required to file answers within 14 days of this Order. They would presumably assert [the same defenses] in those answers. Defendants would then file Rule 12(c) motions, the parties would repeat the briefing they have already undertaken, and the Court would have to address the same questions in several months. That is not the intended effect of Rule 12(g), and the result would be a contradiction of Rule 1's mandate[.]

*Allstate Ins. Co. v. Countrywide Fin. Corp.*, 824 F. Supp. 2d 1164, 1175 (C.D. Cal. 2011) (citations omitted); *see also Doe v. White*, No. 08-1287, 2010 WL 323510, at *2 (C.D. Ill. Jan. 20, 2010) (stating "[t]here is a substantial amount of case law which provides that successive Rule 12(b)(6) motions may be considered where they have not been filed for the purpose of delay, where entertaining the motion would expedite the case, and where the motion would narrow the issues involved" and citing cases). Pursuant to Rule 1, I find it appropriate to consider TN Warranty's motion despite its procedural deficiencies.[1]

## IV. APPLICABLE STANDARDS

The standards for a motion under Rule 12(b)(6) and a motion under Rule 12(c) are the same. *See, e.g., Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011) ("Rule 12(c) is functionally identical to Rule 12(b)(6) and . . . the same standard of review applies to motions brought under either rule.") (internal quotation marks omitted); *Revell v. Port Auth. of New York, New Jersey*, 598 F.3d 128, 134 (3d Cir. 2010) ("A motion for judgment on the pleadings based on the defense that the plaintiff has failed to state a claim is analyzed under the same standards that apply to a Rule 12(b)(6) motion."); *Roger Miller Music, Inc. v. Sony/ATV Publishing, LLC*, 477

---

[1] For the same reasons, I will consider the motion despite TrueNorth's allegation that it is untimely. The motion has been fully briefed and is ripe for decision. Denying it as untimely would do nothing but invite TN Warranty to file it again as either (a) a Rule 12(c) motion or (b) a motion for summary judgment. Either way, repetitive briefing and delay would ensue.

F.3d 383, 389 (6th Cir. 2007) ("The standard of review for a judgment on the pleadings is the same as that for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)."); *Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010) ("The same standard applicable to Fed. R. Civ. P. 12(b)(6) motions to dismiss applies to Fed. R. Civ. P. 12(c) motions for judgment on the pleadings.") (citation omitted).

As such, I must consider whether TrueNorth has "fail[ed] to state a claim upon which relief can be granted" with regard to Count III. Fed. R. Civ. P. 12(b)(6). The Supreme Court has provided the following guidance in considering whether a pleading properly states a claim:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in [*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007)], the pleading standard Rule 8 announces but does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Id.*, at 555, 127 S. Ct. 1955 (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L.Ed.2d 209 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555, 127 S. Ct. 1955. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.*, at 557, 127 S. Ct. 1955.
>
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.*, at 570, 127 S. Ct. 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556, 127 S. Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id.*, at 557, 127 S. Ct. 1955 (brackets omitted).

*Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009).

Courts assess "plausibility" by "'draw[ing] on [their own] judicial experience and common sense.'" *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 679). Also, courts "'review the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation.'" *Id*. (quoting *Zoltek Corp. v. Structural Polymer Grp.*, 592 F.3d 893, 896 n. 4 (8th Cir. 2010)). While *factual* "plausibility" is typically the focus of a Rule 12(b)(6) motion to dismiss, federal courts may dismiss a claim that lacks a cognizable *legal* theory. *See, e.g., Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013); *Ball v. Famiglio*, 726 F.3d 448, 469 (3d Cir. 2013); *Commonwealth Prop. Advocates, L.L.C. v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1202 (10th Cir. 2011); *accord Target Training Intern., Ltd. v. Lee*, 1 F. Supp. 3d 927 (N.D. Iowa 2014).

When a complaint does not state a claim for relief that is plausible on its face, the court must consider whether it is appropriate to grant the pleader an opportunity to replead. The rules of procedure permit a party to respond to a motion to dismiss by amending the challenged pleading "as a matter of course" within twenty-one days. *See* Fed. R. Civ. P. 15(a)(1). Thus, when a motion to dismiss highlights deficiencies in a pleading that can be cured by amendment, the pleader has an automatic opportunity to do so. When the pleader fails to take advantage of this opportunity, the question of whether to permit an amendment depends on considerations that include:

> whether the pleader chose to stand on its original pleadings in the face of a motion to dismiss that identified the very deficiency upon which the court dismissed the complaint; reluctance to allow a pleader to change legal theories after a prior dismissal; whether the post-dismissal amendment suffers from the same legal or other deficiencies as the dismissed pleading; and whether the post-dismissal amendment is otherwise futile.

*Meighan v. TransGuard Ins. Co. of Am., Inc.*, 978 F. Supp. 2d 974, 982 (N.D. Iowa 2013).

## V. DISCUSSION

"Dilution occurs when consumers associate a famous mark that has traditionally identified the mark holder's goods with a new and different source." *Luigino's, Inc. v. Stouffer Corp.*, 170 F.3d 827, 832 (8th Cir. 1999). The Trademark Dilution Revision Act (TDRA) of 2006 provides:

> Subject to the principles of equity, the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury.

15 U.S.C. § 1125(c)(1). Under this statute, a plaintiff must prove the following elements to succeed on a trademark dilution claim: (1) plaintiff owns a famous and distinctive mark, (2) defendant used a diluting mark in commerce, (3) that an association arose from the similarity of the two marks, and (4) that the association harms the reputation of or impairs the distinctiveness of the famous mark. *See e.g.*, *Swatch AG v. Beehive Wholesale, LLC*, 739 F.3d 150, 163 (4th Cir. 2014); *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 634 (9th Cir. 2008); *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1371-76 (Fed. Cir. 2012). TN Warranty's motion focuses on the first element – whether TrueNorth's mark is famous – which has been described as a "rigorous standard." *Everest Capital Ltd. v. Everest Funds Mgt., L.L.C.*, 393 F.3d 755, 763 (8th Cir. 2005).

A mark is famous "if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A). The court may consider the following non-exclusive list of factors in determining whether the mark "possesses the requisite degree of recognition":

(i) The duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties

(ii) The amount, volume, and geographic extent of sales of goods or services offered under the mark

(iii) The extent of actual recognition of the mark

(iv) Whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register.

*Id.* Some courts have interpreted the TDRA to require the mark to be a "household name." *Kibler v. Hall*, 843 F.3d 1068, 1083 (6th Cir. 2016); *Nissan Motor Co. v. Nissan Computer Corp.*, 378 F.3d 1002, 1012 (9th Cir. 2004). Indeed, the legislative history of the Federal Trademark Dilution Act of 1995 cites brands such as Dupont, Buick and Kodak. *See* H.R. Rep. No. 104-374, at 3, *reprinted in* 1996 U.S.C.C.A.N. 1029, 1030 (providing the example that DUPONT shoes, BUICK aspirin and KODAK pianos would be actionable under the legislation).

TN Warranty argues that TrueNorth's allegations are insufficient with regard to whether its mark is famous. Specifically, it notes that TrueNorth alleges its brand is "well-known and recognized <u>in the transportation industry</u> as a leader in insurance and financial strategies," *see* Doc. No. 44 at 3, ¶ 15 (emphasis added), which is insufficient under the statute requiring that the mark be "widely recognized by the <u>general</u> consuming public." 15 U.S.C. § 1125(c)(2)(A) (emphasis added). In other words, it has not achieved "household name" status similar to marks such as Coca-Cola, Apple or Budweiser. *See* Doc. No. 50-1 at 6.

TrueNorth argues that TN Warranty confuses the rigorous legal standard under 15 U.S.C. § 1125(c) with the pleading standard under Rule 8 and the requirements set forth

10

in *Iqbal* and *Twombly*.² It points out that TN Warranty relies on authority addressing the evidentiary support for dilution claims rather than the pleading standard for such claims. TrueNorth contends that its amended complaint alleges sufficient facts (and not merely legal conclusions) in support of the factors under 15 U.S.C. § 1125(c)(2)(A) to state a claim that is "plausible on its face" under *Iqbal* and *Twombly*. It cites several cases in which trademark dilution claims have been successfully pleaded without having involved marks that would be considered "household names." *See, e.g.*, *A.V.E.L.A., Inc. v. Estate of Marilyn Monroe, LLC*, 131 F. Supp. 3d 196, 215-16 (S.D.N.Y. 2015) (complaint sufficiently pleaded that MONROE marks were famous); *Manley v. Boat/U.S., Inc.*, 75 F. Supp. 3d 848, 857-59 (N.D. Ill. 2014) (complaint sufficiently pleaded that BoatU.S. and TowBoatU.S. were famous marks).

On the other hand, TN Warranty points out that courts have found that some well-known marks (such as the University of Texas Longhorns and COACH) did not meet the rigorous fame standard. *See Bd. of Regents v. KST Elec., Ltd.*, 550 F. Supp. 2d 657, 674 (W.D. Tex. 2008) (adopting R&R, which recommended granting defendant's summary judgment motion on plaintiff's trademark dilution claim stating "[s]imply because UT athletics have achieved a level of national prominence does not necessarily mean that the longhorn logo is so ubiquitous and well-known to stand toe-to-toe with Buick or KODAK."); *Coach Servs., Inc.* 668 F.3d at 1373 (concluding that evidence was insufficient to prove that COACH, known for high-end handbags and leather goods, was a "famous mark" under the TDRA).³

---

² *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

³ While these cases were decided on summary judgment, they are informative of the high standard of fame under 15 U.S.C. § 1125(c) and, therefore, the type of allegations needed to state a plausible claim.

11

It is important to note that "fame" for dilution purposes and trademark infringement purposes (specifically, the likelihood of confusion test) is different. "[A] mark can acquire sufficient public recognition and renown to be famous for purposes of likelihood of confusion without meeting the more stringent requirement for dilution fame." *Id.* "[F]ame for dilution 'is an either/or proposition' – it either exists or does not." *Id.* (citing *Palm Bay Imports Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F.3d 1369, 1374-75 (Fed. Cir. 2005)). "[F]ame for likelihood of confusion is a matter of degree along a continuum." *Id.*

For dilution purposes, a mark must be famous beyond a niche market. *See Top Tobacco, L.P. v. N. Atl. Operating Co., Inc.*, 509 F.3d 380, 384 (7th Cir. 2007) ("[Section] 1125 . . . was amended in October 2006 to use 'the general public' as the benchmark. This change eliminated any possibility of 'niche fame' which some courts had recognized before the amendment."); *see also Mike Vaughn Custom Sports, Inc. v. Piku*, 15 F. Supp. 3d 735 (E.D. Mich. 2014) (dismissing dilution claim because plaintiff's trade dress was not famous beyond a niche sports market); *Luv N' Care, Ltd. v. Regent Baby Products, Corp.*, 841 F. Supp. 2d 753, 757-58 (S.D.N.Y. 2012) (dismissing trade dress dilution claim because marks associated with baby products were not recognized beyond that niche market); *Field of Screams, LLC v Olney Boys & Girls Cmty. Sports Ass'n*, Civil Action No. DKC 10-0327, 2011 WL 890501, at *9 (D. Md. Mar. 14, 2011) ("Although Plaintiff pleads facts suggesting that its venue has received recognition in the 'haunt' industry (and some sporadic attention in national forums), those facts do not indicate that, nationwide, the 'general consuming public' would recognize the mark."); *DigitAlb, Sh.a v. Setplex, LLC*, __F. Supp. 3d __, 2018 WL 377381 (S.D.N.Y. Jan. 11, 2018) (dismissing trademark dilution claim of Albanian corporation distributing Internet protocol television programming from Albanian-language television channels because the claim did not contain sufficient factual matter to plausibly allege that mark was close to being "widely recognized by the general consuming public of the United States"); *Aegis*

12

*Software, Inc. v. 22nd Dist. Agricultural Ass'n*, 255 F. Supp. 3d 1005, 1011 (S.D. Cal. 2017) (dismissing plaintiff's dilution claim for the marks "San Diego Spirits Festival" and "San Diego International Spirits Bottle Competition" because the marks had not achieved fame beyond a specialized market).

While the pleading standard itself is not rigorous and this type of claim is not subject to a heightened pleading standard (such as claims that fall under Rule 9(b)), the nature of a dilution claim itself makes it difficult to "state a claim to relief that is plausible on its face." *See Iqbal*, 556 U.S. at 678; *Brookwood Funding, LLC v. Avant Credit Corp., Inc.*, No. 1:14-CV-2960-SCJ, 2015 WL 11504556, at *4 (N.D. Ga. July 28, 2015) ("[W]hether a mark is 'famous' is a legal conclusion and therefore, on a motion to dismiss, the court does not simply accept Plaintiff's recitation of that element of its dilution case. Rather, under *Twombly* and *Iqbal*, Plaintiff must allege facts which make such a conclusion plausible."). The fame element is purposely rigorous because section 1125(c) is intended to protect a very specific type of trademark and trade dress. *See Everest Capital Ltd.*, 393 F.3d at 763 (citing *Avery Dennison Corp. v. Sumpton*, 189 F.3d 868, 875 (9th Cir. 1999)) ("Dilution is a cause of action invented and reserved for a select class of marks – those marks with such powerful consumer associations that even non-competing uses can impinge their value."). While TrueNorth need not prove that its mark is famous at this juncture, it must allege facts demonstrating that fame is not only possible, but plausible.

TrueNorth's allegations, even when accepted as true, fall well short of stating a plausible claim of mark dilution based on the "rigorous standard" of a famous mark. With regard to the first factor under 15 U.S.C. § 1125(c)(2)(A) (the duration, extent and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties), TrueNorth alleges that "[s]ince establishing the brand in 2001, TrueNorth has invested well over $30 million in marketing efforts to strengthen the TrueNorth brand, both locally and nationally." Doc. No. 44 at 3. It

provides no further details regarding the extent or geographic reach of its advertising and publicity. *See* 15 U.S.C. § 1125(c)(2)(A)(i). *Compare VISA Int'l Servs. Ass'n v. JSL Corp.*, 590 F. Supp. 2d 1306,1315 (D. Nev. 2008) (alleging that plaintiff has promoted and advertised the VISA mark for more than 25 years in print, on the Internet and in other media; spent more than $1 billion on advertising in the United States from 1997 to 2000 and the VISA mark has been used in each of the 50 states, in more than 300 countries and territories and on the Internet); *see also Plumeus, Inc. v. Intersog LLC*, No. 13 C 2206, 2013 WL 5609331, at *2 (N.D. Ill. Oct. 11, 2013) (allegations that plaintiff "invested substantial resources" in "numerous national and international marketing campaigns" using its marks since 1996 was insufficient under *Twombly* to suggest its mark was a household name). While TrueNorth provides the duration of and the amount spent on "marketing efforts," its allegations as to this factor are otherwise vague. More detailed factual allegations are necessary to establish that its mark is plausibly famous.

The second factor to consider is the "amount, volume, and geographic extent of sales of goods or services offered under the mark." 15 U.S.C. § 1125(c)(2)(A)(ii). TrueNorth alleges that it has offices in six states, provides financial and insurance services to a wide variety of client types across the United States and services clients around the country. Doc. No. 44 at 3. It provides no further details regarding the "amount, volume, and geographic extent of sales of goods or services offered under [its] mark." *See* 15 U.S.C. § 1125(c)(2)(A)(ii). *Compare Manley*, 75 F. Supp. 3d at 858 (finding plausible trademark dilution claim where plaintiff alleged it had over half a million members and the nation's largest towing fleet); *VISA Int'l Servs. Ass'n*, 590 F. Supp. 2d at 1315 (alleging that in 2006, VISA brand cards were used in $1.3 trillion of U.S. sales and were accepted at more than 6.3 million locations in the United States); *see also Parts.com, LLC v. Yahoo! Inc.*, 996 F. Supp. 2d 933, 940 (S.D. Cal. 2013) (fact that plaintiff was the source of 20 million automotive replacement parts was insufficient to establish fame as allegations did not specify how many parts it sells per year, what its

annual sales revenue is or where the sales are made). Again, TrueNorth's allegations are vague and do not establish the plausibility that its mark is famous.

The third factor is the extent of the actual recognition of the mark. 15 U.S.C. § 1125(c)(2)(A)(iii). TrueNorth alleges its brand is well-known and recognized in the transportation industry, as evidenced by its partnerships with some of the nation's leading motor carriers and transportation associations. Doc. No. 44 at 3. Besides being conclusory, this allegation is insufficient because a mark's fame must go beyond a niche market, such as the transportation industry. *See Parts.com, LLC*, 996 F. Supp. 2d at 941 (stating "[a]lthough a household name brand like Coca-Cola likely could simply allege that it is 'famous and well-known,' Parts.com does not have this kind of consumer cachet" and requires more detailed factual allegations regarding actual recognition). This factor also fails to establish that the TrueNorth mark is plausibly famous.

The fourth factor considers whether the mark is registered. *See* 15 U.S.C. § 1125(c)(2)(A)(iv). While TrueNorth alleges it has three registered trademarks with the USPTO, this factor alone is insufficient to establish plausibility as to TrueNorth's fame for purposes of its trademark dilution claim. *See Coach Servs.*, 668 F.3d at 1374 ("[o]ne cannot logically infer fame from the fact that a mark is one of the millions on the Federal Register."). In sum, TrueNorth's allegations, if true, would support the mark's fame only with regard to a niche market and not the "general consuming public." Therefore, I find that dismissal is appropriate with regard to Count III.[4]

---

[4] With regard to whether TrueNorth should have the opportunity to amend its complaint to allege additional facts in support of its claim, I find that such an opportunity would be futile. TrueNorth has already amended its complaint once and has provided no information regarding how it would amend its complaint to cure the deficiencies discussed above. *See Aegis Software, Inc.*, 255 F. Supp. 3d at 1012 (citing same reasons for denying plaintiff's request for leave to amend its first amended complaint); *United States ex rel. Lee v. Fairview Health System*, 413 F.3d 748, 749 (8th Cir. 2005) (discussing futility as a valid basis for denying leave to amend especially when plaintiff fails to communicate substance of proposed amendments).

## VI. CONCLUSION

For the reasons set forth herein, defendant's motion (Doc. No. 50) for judgment on the pleadings with regard to Count III (Mark Dilution) is **granted**. Count III is **dismissed with prejudice**.

**IT IS SO ORDERED.**

**DATED** this 8th day of February, 2018.

_____
Leonard T. Strand, Chief Judge