# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CEDAR RAPIDS DIVISION

| | | |
|---|---|---|
| TRUENORTH COMPANIES, L.C., et al., | ‖ | |
| Plaintiffs, | ‖ | No. C17-31-LTS |
| vs. | ‖ | |
| TRUNORTH WARRANTY PLANS OF NORTH AMERICA, LLC, et al. | ‖ | **MEMORANDUM OPINION AND ORDER** |
| Defendants. | ‖ | |

## I.    INTRODUCTION

This matter is before me on the following motions: (1) a motion (Doc. No. 271) to dismiss for lack of personal jurisdiction by defendant TruNorth Global Corp. (TN Global); (2) an appeal (Doc. No. 274) by defendant TruNorth Warranty Plans of North America, LLC (TN Warranty) of an order (Doc. No. 250) by Chief United States Magistrate Judge Kelly K.E. Mahoney granting in part plaintiffs' motion to make an untimely jury demand on Count VI and (3) a motion (Doc. No. 295) for reconsideration/clarification of my order (Doc. No. 266) granting in part and denying in part TN Warranty's motion for summary judgment.  TN Global has filed a brief (Doc. No. 272) in support of its motion to dismiss for lack of personal jurisdiction, plaintiffs TrueNorth Companies, L.C. and TrueNorth Principals, L.C. (together, TrueNorth) have filed a resistance (Doc. No. 281) and TN Global has filed a reply (Doc. No. 308).  With regard to TN Warranty's appeal (Doc. No. 274) on Judge Mahoney's order, TrueNorth has filed a resistance (Doc. No. 277), TN Warranty has filed a reply (Doc. No. 298) and TrueNorth has filed a sur-reply (Doc. No. 301).  Finally, with regard to the motion (Doc.

No. 295) for reconsideration/clarification of my summary judgment order, TrueNorth has filed a resistance (Doc. No. 296) and TN Warranty has filed a reply (Doc. No. 300).

Also pending is a motion (Doc. No. 255) in limine by TrueNorth, motion (Doc. No. 263) in limine by TN Warranty, and a motion (Doc. No. 309) to exclude testimony at trial or alternatively compel a deposition, both of which will be addressed by separate order.

## II.     PROCEDURAL BACKGROUND

The background of this case has been summarized in numerous orders that I find unnecessary to repeat here. *See* Doc. Nos. 40, 135, 250, 266.

On May 3, 2019, Chief United States Magistrate Judge Kelly K.E. Mahoney allowed TrueNorth to file a third amended complaint adding TN Global Corp. as a party defendant.[1] *See* Doc. No. 240.

On June 10, 2019, I entered an order on TN Warranty's motion for summary judgment, finding the following claims should go to trial:

- Count I – Trademark Infringement under 15 U.S.C. § 1114
- Count II – Trademark Infringement under 15 U.S.C. § 1125
- Count III – False Designation of Origin under 15 U.S.C. § 1125
- Count VI – Unfair Competition under 15 U.S.C. § 1125 and common law[2]

Doc. No. 266.  Trial is scheduled for January 13, 2020.[3]  *See* Doc. No. 299.

---

[1] TN Global Corp. is alleged to be a new business formed by TN Warranty's founder, William "Kirk" Eskridge, to provide risk management services.  *See* Doc. No. 132-1 at 3, 9.

[2] I granted summary judgment with respect to the portion of this claim based on false advertising under common law.  *See* Doc. No. 266 at 90.

[3] Judge Mahoney determined that TrueNorth is not entitled to a jury trial on Counts I through V, but is entitled to a jury trial on its state-law unfair-competition claim seeking punitive

### III.    DISCUSSION

**A.    Motion to Dismiss for Lack of Personal Jurisdiction**

TN Global moves to dismiss the claims against it pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction.  TN Global notes that it was formed on September 26, 2018,[4] and was not in existence during much of the relevant time period.  Its only officer is Kirk Eskridge.  It contends it does not have any presence in Iowa and does not do business with any used commercial truck retailers or any other business in Iowa.  *See* Doc. No. 272 at 2.  It states it does not have any employees, has never had any in-person contacts with anyone in Iowa and is a wholly separate entity from TN Warranty.  *Id.*  It also represents it does not have any ownership in TN Warranty.[5]  *Id.*

TrueNorth alleges that TN Global sent "an email blast . . . on February 19, 2019 to individuals and entities in Iowa, including to Joe Hoovestol of Lone Mountain Trucking, in Carter Lake, Iowa."  *See* Doc. No. 132-1 at ¶ 6.  The email received by

---

damages.  *See* Doc. No. 250.

[4] TrueNorth disputes this, noting that in an Application for Certificate of Authority signed by Eskridge on September 24, 2018, and filed with the North Carolina Secretary of State on September 26, 2018, Eskridge stated TN Global was incorporated on August 22, 2018, in Delaware.  *See* Doc. No. 281 at 2, n.1 (citing Doc. No. 190-2).  TrueNorth contends this distinction is significant because it filed its motion for preliminary injunction against TN Warranty on August 20, 2018.  *See* Doc. No. 62.

[5] This is somewhat confusing because TN Global states in its reply that it was formed as a holding company of some kind.  *See* Doc. No. 308 at 2-3 ("TN Global is related to TNWarranty as a holding company for *foreign* intellectual property rights" and "TN Global is a new company formed as a future holding company, to be operated within the same 'family' of businesses as TNWarranty") (emphasis in original).  TN Global cites Eskridge's declaration in support of these statements, but these statements are not in Eskridge's declaration.  Nonetheless, and while TN Global has managed to make this basic factual issue murky, there is no evidence in the record indicating that TN Global actually owns any interest in TN Warranty.  In any event, my analysis, *infra*, of TN Global's motion to dismiss does not turn on whether TN Global owns any interest in TN Warranty.

Hoovestol states:

> Hi, just a reminder you're receiving this email because you have expressed an interest in TruNorth. Don't forget to add TruNorth@TruNorthWarranty.com to your address book so we'll be sure to land in your inbox!

*See* Doc. No. 190-1 at 1. Based on this language, TrueNorth contends the email was likely sent to TN Warranty's other contacts in Iowa, including its admitted 45 "authorized dealers" in Iowa. Doc. No. 281 at 3 (citing Doc. No. 207 at 135-36). It notes that the email included TN Global's logo, advertised that TN Global provides "capital," "acquisitions" and "risk management" services and also included TN Warranty's logo, identifying it as the "leader in asset coverage." Doc. No. 281 at 3 (citing Doc. No. 190-1 at 3).

TrueNorth contends Eskridge's representation that TN Global is a "wholly separate company" from TN Warranty is not credible. It notes that TN Global's website highlights TN Warranty as one of "Our Services." *Id.* (citing Doc. No. 190-1 at 7). It also notes that the only contact information on TN Global's website is TN Warranty's address, as well as the same phone number, direct phone number and fax number displayed on TN Warranty's website. *Id.* (citing Doc. No. 190-1 at 8). It states that on TN Warranty's website (trunorthwarranty.com), a March 28, 2019, news release states "TruNorth Global™" is "the leader in medium and heavy-duty truck protection." *See* Doc. No. 281-2 at 1. TrueNorth points out TN Warranty made this same claim, as to itself, in a news release dated February 20, 2019. *See* Doc. No. 281-3 at 1. TrueNorth alleges that this evidence is contrary to Eskridge's implication that TN Global has done little, if any, domestic business and was formed only to "eventually hold foreign intellectual property rights." Doc. No. 281 at 4 (citing Doc. No. 272-1 at ¶ 5-6).

TrueNorth also cites a June 5, 2019, news release stating "MyTruckWarranty.com, powered by TrüNorth™, is the latest addition to the TrüNorth Global™ family of products and services." *Id.* (citing Doc. No. 281-4). TrueNorth

argues this news release indicates that TN Warranty and TN Global consider themselves interchangeable and that TN Global is a continuation of TN Warranty. *Id.* (citing Doc. No. 281-4 at 4 ("At TrüNorth Global™, our commitment to our dealer partners and warranty customers has always driven everything we do from industry-leading product and service innovations to first-in-marketing technology solutions, including the industry's only mobile app for iOS and Android Devices.")). TrueNorth argues the statements in the news release refute Eskridge's claim that TN Global does not do business with any used commercial truck retailers or any other business in Iowa and does not have any retailers in Iowa. *Id.* It contends TN Global's "dealer partners" is referring to TN Warranty's authorized retailers, including the 45 retailers in Iowa.

In order to properly allege personal jurisdiction, "a plaintiff 'must state sufficient facts in the complaint to support a reasonable inference that the defendant[ ] can be subjected to jurisdiction within the state.'" *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004)), *cert. denied*, 543 U.S. 1147 (2005) (quoting *Block Indus. v. DHJ Indus., Inc.*, 495 F.2d 256, 259 (8th Cir. 1974)). In resisting a Rule 12(b)(2) motion, the plaintiff has the burden of proving facts supporting such jurisdiction. *Wells Dairy, Inc. v. Food Movers Int'l, Inc.*, 607 F.3d 515, 518 (8th Cir.), *cert. denied,* 562 U.S. 962 (2010). The court may consider the allegations of the complaint along with any affidavits and exhibits submitted by the parties. *Id.* The plaintiff's burden, in the absence of an evidentiary hearing, is to make a "minimal" prima facie showing of personal jurisdiction. *K–V Pharm. Co. v. Uriach & CIA, S.A.*, 648 F.3d 588, 592 (8th Cir. 2011). The court "must view the evidence in the light most favorable to the plaintiff and resolve all factual conflicts in its favor in deciding whether the plaintiff has made the requisite showing." *Id.*

"Where a federal court's subject matter jurisdiction over a case arises from the existence of a federal question, the court may exercise personal jurisdiction over a defendant if the plaintiff has properly served the defendant with process under the forum

state's long-arm statute and if the defendant has sufficient contacts with the forum state to satisfy procedural due process." *Enter. Rent-A-Car Co. v. U-Haul Int'l, Inc.*, 327 F. Supp. 2d 1032, 1036 (E.D. Mo. 2004) (citing *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104-05 (1987)); *see also Dakota Indus., Inc. v. Dakota Sportswear, Inc.,* 946 F.2d 1384, 1389 n.2 (8th Cir. 1991). Here, Iowa's long-arm statute provides that if a foreign entity or a nonresident person commits a tort, in whole or in part, against an Iowa resident, then "such acts shall be deemed to be doing business in Iowa" and service of process is authorized on that entity or person. Iowa Code § 617.3.

In general, due process requires that a nonresident defendant have at least "certain minimum contacts" with the forum state to support the exercise of personal jurisdiction. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Those contacts must be sufficient that requiring the defendant to litigate in the forum state would not "offend traditional notions of fair play and substantial justice." *Id*. at 316 (internal quotation marks and citation omitted). They "must come about by an action of the defendant purposefully directed toward the forum State." *Asahi Metal Indus. Co. v. Super. Ct. of Cal.*, 480 U.S. 102, 112 (1987) (internal citations omitted).

This "'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts," or due to "the 'unilateral activity of another party or a third person.'" *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985) (citations omitted). If the defendant made the deliberate choice to "engage[] in significant activities within a State," or to create "'continuing obligations' between himself and residents of the forum," then "it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." *Id*. at 475-76 (citations omitted). Thus:

> By requiring that individuals have "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign," the Due Process Clause "gives a degree of predictability to the legal system that

allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit[.]"

*Id.* at 472-73 (citations omitted).

The Eighth Circuit Court of Appeals applies a five-factor test to determine whether a defendant's contacts with the forum state are sufficient to establish personal jurisdiction. *Myers v. Casino Queen, Inc.*, 689 F.3d 904, 911 (8th Cir. 2012). Those factors are: (1) the nature and quality of the contacts with the forum state; (2) the quantity of those contacts; (3) the relationship of those contacts with the cause of action; (4) the forum state's interest in providing a forum for its residents; and (5) the convenience or inconvenience to the parties. *Id.* (citing *Precision Const. Co. v. J.A. Slattery Co., Inc.*, 765 F.2d 114, 118 (8th Cir. 1985)). The first three factors are considered to be of primary importance. *Precision Const.Co.*, 765 F.2d at 118.

Personal jurisdiction can be either general or specific. General jurisdiction arises when a nonresident maintains "continuous and systematic" contacts with the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415-16 (1984). Under those circumstances, jurisdiction over the nonresident is appropriate even when the claims at issue do not arise out of or relate to its activities in the forum state. *Id.* at 414-15. Specific jurisdiction arises "when the defendant purposely directs its activities at the forum state and the litigation 'result[s] from injuries … relating to [the defendant's] activities [in the forum state.]'" *Myers*, 689 F.3d at 912-13 (quoting *Steinbuch v. Cutler*, 518 F.3d 580, 586 (8th Cir. 2008)). Specific jurisdiction "requires a relationship between the forum, the cause of action, and the defendant. *Id.* at 912 (citing *Helicopteros Nacionales de Colombia*, 466 U.S. at 414). The third factor of the five-factor test "distinguishes between specific and general jurisdiction." *Id.* at 911 (citing *Johnson v. Arden*, 614 F.3d 785, 794 (8th Cir. 2010)).

The Eighth Circuit has rejected the so-called "proximate cause" test for specific jurisdiction, under which the exercise of jurisdiction is appropriate only if the defendant's contacts with the forum was the legal cause of the plaintiff's injuries. *Id.* at 912-13. Instead, the third factor is satisfied so long as (a) the defendant purposely directed its activities at the forum state and (b) the litigation results from injuries relating to the defendant's activities in the forum state. *Id.* (citation and quotation omitted).

TrueNorth argues there is specific personal jurisdiction over TN Global because it markets specifically into Iowa and claims a "dealer partnership" with 45 Iowa entities (by claiming TN Warranty's dealer partners as its own). Doc. No. 281 at 5. TrueNorth notes that three retailers and 13 locations in Iowa was enough to confer personal jurisdiction over TN Warranty. *See* Doc. No. 40 at 16. It argues that sending marketing materials using the allegedly infringing mark and specifically advertising "risk management" services to 45 Iowa "dealer partners" should be enough to satisfy personal jurisdiction over TN Global. *Id.* at 6. TrueNorth also relies on TN Global's press release referencing its "dealer partners" in support of this argument.

In addition, TrueNorth invokes the alter ego or single enterprise doctrine to argue that TN Warranty's contacts with Iowa should be imputed to TN Global. *Id.* at 7. It notes they are both controlled and owned by Eskridge, promote the same services, claim to have the same dealer partners and appear to be interchangeable as they hold themselves out to the public. *Id.* at 10. It also notes that Judge Mahoney allowed TrueNorth to add TN Global as a defendant in a Third Amended Complaint stating: "Eskridge may have had a good reason for creating TN Global, but given the temporal proximity (two days) between TrueNorth's motion for a preliminary injunction and Eskridge creating TN Global, TrueNorth understandably wants to ensure that Eskridge cannot avoid the effects of any injunctive relief simply by acting through TN Global instead of TN Warranty." *See* Doc. No. 240 at 9-10. TrueNorth also argues that TN Global's lack of adequate capitalization allows me to consider it the alter ego of TN Warranty. Finally, TrueNorth

argues it is entitled to jurisdictional discovery, including whether the same February 2019 email was sent to other Iowa entities, the identity of the individuals who developed TN Global's website, sent its email blasts and wrote its news releases and the identification of TN Global's "dealer partners" referenced in its press release. *Id.* at 14.

TN Global argues that aside from a single email, TrueNorth has offered only speculation and conjecture in support of personal jurisdiction. Doc. No. 308 at 2. It contends this is insufficient to rebut Eskridge's sworn declaration stating that TN Global is related to TN Warranty only as a holding company for foreign intellectual property rights and that the two are separate entities for purposes of personal jurisdiction. *Id.* TN Global adds that the fact that Eskridge is a common owner is not enough to support application of the alter ego doctrine. TN Global argues that even if it sent an email to 45 Iowa residents, those emails are insufficient to establish personal jurisdiction absent any other contacts. *Id.* at 4. Finally, TN Global argues that jurisdictional discovery is unwarranted because TrueNorth has not submitted an affidavit describing what facts are sought and how they are to be obtained, how the facts are reasonably expected to raise a genuine issue of material fact and what efforts TrueNorth has made to obtain them. *Id.* at 6. It contends that one email (or even 45 emails) is insufficient to establish personal jurisdiction, which is the only evidence TrueNorth has offered without resorting to speculation.

I agree with TN Global that TrueNorth's evidence concerning TN Global's contacts with Iowa is weak. TN Global does not, on its own, have sufficient minimum contacts with Iowa, such that exercising personal jurisdiction over it would comport with due process. With regard to the first two factors – nature and quality of the contacts and quantity of the contacts – TrueNorth has established that Eskridge recently formed another "TruNorth" company and that that company has sent an email to at least one TN Warranty customer, and potentially 45 Iowa dealers. While that contact is related to this cause of action, that factor, on its own, is insufficient to establish personal jurisdiction.

Unlike TN Warranty, there is no evidence that TN Global has actually done any business in Iowa, including any business with TN Warranty's Iowa dealers. For instance, there is no evidence that TN Warranty's dealers are selling anything other than warranties that could be attributed to TN Global. At most, TrueNorth has shown that TN Global sent an email to TN Warranty's Iowa dealers. This is insufficient to establish personal jurisdiction.[6]

TrueNorth's better argument is that personal jurisdiction over TN Global is appropriate because it and TN Warranty are one and the same. However, this argument also falls short of establishing personal jurisdiction. "Personal jurisdiction can be properly asserted over a corporation if another is acting as its alter ego, even if that alter ego is another corporation." *Epps v. Stewart Information Servs. Corp.*, 327 F.3d 642, 649 (8th Cir. 2003). An entity is the alter ego of another if (1) the other entity influences and governs the subject entity; (2) a unity of interest and ownership exists such that the two entities cannot be separated and (3) giving effect to the fictional separation between the two entities would sanction a fraud or promote injustice. *See HOK Sport, Inc. v. FC*

---

[6] *See Porter v. Berall*, 293 F.3d 1073, 1076 (8th Cir. 2002) ("Contact by phone or mail is insufficient to justify exercise of personal jurisdiction under the due process clause."); *Federal Deposit Ins. Corp. v. Malmo*, 939 F.2d 535, 536-37 (8th Cir. 1991) (affirming the district court's dismissal for lack of personal jurisdiction, which reasoned that "one letter of solicitation, when it represents the sole contact with the forum state, is insufficient to satisfy the test of sufficient contacts under the fifth amendment due process clause."); *Burlington Indus. v. Maples Indus.*, 97 F.3d 1100, 1103 (8th Cir. 1996) (even 100 telephone calls by defendant to plaintiff were "insufficient, alone, to confer personal jurisdiction."); *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 594 (8th Cir. 2011) (concluding that telephone calls, written communications and wire transfers to and from a forum state do not create sufficient contacts such that a foreign corporation could "reasonably anticipate being haled into court there"); *Scullin Steel Co. v. Nat'l Ry. Utilization Corp.*, 676 F.2d 309, 313 (8th Cir. 1982) (holding that phone and fax communications to the forum and purchase orders and payments sent to the forum are insufficient to establish minimum contacts).

*Des Moines, L.C.*, 495 F.3d 927, 935 (8th Cir. 2007) (applying Iowa law).[7] Determining whether a wholly owned subsidiary is the alter ego of a parent corporation "is contingent on the ability of the plaintiffs to pierce the corporate veil." *Epps*, 327 F.3d at 649. Under Iowa law, "[a] court may disregard a corporate structure by piercing the corporate veil only under circumstances 'where the corporation is a mere shell, serving no legitimate business purpose, and used primarily as an intermediary to perpetuate fraud or promote injustice.'" *In re Marriage of Ballstaedt*, 606 N.W.2d 345, 349 (Iowa 2000) (quoting *C. Mac Chambers Co. v. Iowa Tae Kwon Do Acad., Inc.*, 412 N.W.2d 593,

---

[7] TrueNorth points out that state law governs the question of whether one entity is the alter ego of another but contends that Iowa law is not well developed in this area. Doc. No. 281 at 9, n.4. It also explains that this raises the question of which state's law should apply to an alter ego theory in a case involving an Iowa plaintiff and out-of-state defendant. *Id.* (citing *Tyson Fresh Meats, Inc.*, 918 F. Supp. 2d at 849-50). I find that Iowa law is sufficiently developed on the alter ego theory for purposes of determining whether exercising personal jurisdiction over a non-resident corporation would comport with due process. While I will apply Iowa law, I find that application of North Carolina law (the state in which TN Global is incorporated) would result in the same conclusion. *See Green v. Freeman*, 749 S.E.2d 262, 270 (N.C. 2013) (noting courts have relied on the following types of evidence to justify piercing the corporate veil: "inadequate capitalization, noncompliance with corporate formalities, lack of a separate corporate identity, excessive fragmentation, siphoning of funds by the dominant shareholder, nonfunctioning officers and directors, and absence of corporate records."). The Court in *Green* noted the alter ego analysis is guided by the following three elements:

> (1) Control, not mere majority or complete stock control, but complete domination, not only of finances, but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; and

> (2) Such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest and unjust act in contravention of [a] plaintiff's legal rights; and

> (3) The aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of.

*Id.*

597-98 (Iowa 1987)). In determining whether the corporate veil should be pierced, the court should consider whether: "(1) the corporation is undercapitalized, (2) without separate books, (3) its finances are not kept separate from individual finances, individual obligations are paid by the corporation, (4) the corporation is used to promote fraud or illegality, (5) corporate formalities are not followed or (6) the corporation is merely a sham." *Lakota Girl Scout Council, Inc. v. Havey Fund-Raising Mgmt., Inc.*, 519 F.2d 634, 638 (8th Cir. 1975).

Applying those factors, TrueNorth alleges that TN Global is undercapitalized, but has provided no proof and mistakenly puts the burden on TN Global. *Id.* at 13 ("Eskridge's Declaration provides no evidence that TN Global was adequately capitalized when it was formed, or soon thereafter."). *See Epps*, 327 F.3d at 647 ("The party seeking to establish the court's in personam jurisdiction carries the burden of proof, and the burden does not shift to the party challenging jurisdiction."). Eskridge states: "As TN Global was only recently formed, TN Global continues to be capitalized and will eventually hold foreign intellectual property rights. TN Global will continue to be capitalized as additional foreign intellectual property rights are obtained." Doc. No. 272-1 at 3.

With regard to the second and third alter ego factors, there is no evidence that the corporations do not keep separate books or that their finances are not kept separately. Eskridge represents that "TN Global keeps separate financial records, and its overall finances are kept separate from those of TN Warranty and me." *Id.* While the two entities are owned by Eskridge and Eskridge is the sole officer of each entity, this does not necessarily mean they are not separate entities. *See United States v. Bestfoods*, 524 U.S. 51, 69 (1998) (noting is a well-established principle of corporate law "that directors and officers holding positions with a parent and its subsidiary can and do 'change hats' to represent the corporations separately, despite their common ownership."). There is also no evidence that TN Global is used to promote fraud or illegality. While TrueNorth

suggests that corporate formalities are not followed and perhaps that TN Global is merely a sham, these allegations are based on speculation and conjecture. There is no evidence that TN Global influences and governs TN Warranty and has such a unity of interest and ownership that it cannot be separated from TN Warranty.

I also do not find that jurisdictional discovery is warranted here. Jurisdictional discovery is warranted only "if the facts necessary to resolve the jurisdictional inquiry are either unknown or can be genuinely disputed." *F.D.I.C. v. Dosland*, 50 F. Supp. 3d 1070, 1077 (N.D. Iowa 2014). TrueNorth requests discovery to determine: (1) whether the February 2019 email was sent to other Iowa entities, (2) the identity of the individuals who developed TN Global's website, sent its email blasts and wrote its news releases and (3) the identification of TN Global's "dealer partners" referenced in its press release. Essentially, it wants to establish that TN Global sent emails to all of TN Warranty's Iowa contacts and is referring to TN Warranty's "dealer partners" (including Iowa dealer partners) as its "dealer partners" in its press release. Even if TrueNorth established these facts through discovery, none of them go toward the alter ego factors and they would be insufficient to establish personal jurisdiction as to TN Global without more. *See Goellner-Grant v. Platinum Equity LLC*, 341 F. Supp. 2d 1022, 1029-30 (E.D. Mo. 2018) (rejecting similar alter ego theory that parent company marketed to and used subsidiary's in-state contacts to its benefit, which was supported primarily by press release articles); *Epps*, 327 F.3d at 650 ("the general rule is that a parent corporation that owns a subsidiary – even wholly owns a subsidiary – is not present in a state merely because the subsidiary is there"); *Moody v. Charming Shoppes of Delaware, Inc.*, No. C 07-06073 MHP, 2008 WL 2128955 (N.D. Cal. May 20, 2008) ("[g]eneric language on [company's] website and in its press releases simply do not rise to the day-to-day control required to impute the subsidiary's contacts to the parent"); *Payoda, Inc. v. Photon Infotech, Inc.*, Case No. 14-cv-04103-BLF, 2015 WL 4593911, at *3 (N.D. Cal. July 30, 2015) ( "marketing puffery carries no weight in establishing whether a parent and its

13

subsidiary are in fact alter egos."). Even though TrueNorth alleges that TN Global is the one reaching out to Iowa "dealers," proving this allegation would establish only email contact with Iowa, which is generally insufficient to confer personal jurisdiction. *See supra*, n. 6. Any other jurisdictional basis is supported only by speculation. *See Viastystems, Inc.*, 646 F.3d at 598 ("[W]hen a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery.").

For these reasons, TrueNorth's request for jurisdictional discovery is denied and TN Global's motion to dismiss for lack of personal jurisdiction will be granted.

### B.    *Motion to Reconsider/Clarify Order on Motion for Summary Judgment*

TN Warranty moves for reconsideration or clarification pursuant to Federal Rules of Civil Procedure 59(e) and 60(b) regarding my order (Doc. No. 266) on TN Warranty's motion for summary judgment. TN Warranty asks for reconsideration or clarification on its argument that TrueNorth's state law claim for unfair competition is preempted by the Lanham Act, thereby precluding recovery of punitive damages. *See* Doc. No. 295.

TrueNorth argues that reconsideration is inappropriate pursuant to Rule 59(e) because that rule addresses altering or amending a judgment and a judgment is defined as "a decree and any order from which an appeal lies." Doc. No. 296 at 1 (citing Fed. R. Civ. P. 54(a)). It contends my order (Doc. No. 266) denying TN Warranty's motion for summary judgment as to part of Count VI is not an order from which an appeal lies. *Id.* at 1-2 (citing 28 U.S.C. §§ 1291 (providing for appeal from "final decisions") and 1292 (providing for interlocutory appeals in limited situations)).

TrueNorth also argues that I should not address the motion under Rule 59(e) because TN Warranty failed to raise a relevant factual or legal argument in the first instance. TrueNorth adds that reconsideration pursuant to Rule 60(b) is the appropriate rule, but that TN Warranty has not identified any of the grounds necessary for

reconsideration (mistake, inadvertence, surprise or excusable neglect; newly discovered evidence; fraud, misrepresentation, or misconduct by an opposing party; the judgment is void; the judgment has been satisfied, released or discharged, is based on an earlier judgment that has been reversed or vacated or applying it prospectively is no longer equitable; or any other reason that justifies relief).

In its initial memorandum in support of its motion for summary judgment, TN Warranty made the following argument regarding whether TrueNorth's state law claims are preempted by the Lanham Act:

> Plaintiffs cannot use Iowa state law to avoid the deficiencies in their Lanham Act claims, even for marks that are not subject to a state law registration. Indeed, in *United States Jaycees*, this Court held that the Lanham Act preempts the operation of the Iowa Dilution Statute, because the Iowa statute would conflict with one of the major goals of the Lanham Act – uniformity – if it was applied to goods in interstate commerce." 661 F.Supp at 1367. This Court concluded that, "to the extent that Iowa Code § 548.11 regulates interstate commerce, it is preempted by the Lanham Act" and because "both plaintiff and defendants are clearly involved in interstate commerce" plaintiff's dilution claim under Iowa law "must be denied." *Id.* at 1368. Similarly, *Comidas Exquisitos v. Carolos McGee's Mexican Café*, 602 F. Supp. 191 (S.D. Iowa 1985), the court held that, "because the Lanham Act has preempted state trademark law as applied to interstate commerce," state law "cannot enlarge plaintiff's rights under the federal law." *Id.* at 198.

Doc. No. 180 at 77 (footnote omitted). Notably, there was no discussion regarding TrueNorth's claim of punitive damages in TN Warranty's motion for summary judgment. The above argument was made under the heading: "For the same fatal defects with their federal infringement, and unfair competition and false advertising claims, Plaintiffs' state law claims for infringement, unfair competition and false advertising also fail as a matter of law." *See* Doc. No. 180 at 75.

TrueNorth made the following argument in resistance:

> To the extent TNWarranty argues that the Lanham Act preempts TrueNorth's state law claims, including its common law unfair competition,

trademark infringement, and false advertising claims, TNWarranty is mistaken. The cases relied upon by TNWarranty merely state that an Iowa statute cannot broaden rights to allow a plaintiff a cause of action absent a likelihood of confusion. *See Comidas Exquisitos, Inc. v. Carlos McGee's Mexican Cafe, Inc.*, 602 F. Supp. 191, 198 (S.D. Iowa 1985) (rejecting argument that "a likelihood of confusion is not required to support its claim under § 548.11.2"), aff'd, 775 F.2d 260 (8th Cir. 1985).

TNWarranty has not argued that the Lanham Act preempts TrueNorth's common law claims for punitive damages. Any such argument would be unfounded. "The 'doctrine of unfair competition' under Iowa law is at least as broad" as a claim for unfair competition under the Lanham Act. *See Iowa Health System v. Trinity Health Corp.*, 177 F. Supp. 2d 897, 929 (N.D. Iowa 2001). As the Eighth Circuit has recognized in a trademark action, "Iowa permits an award of punitive damages in an action for unfair competition ... [t]he allowance of [which] rests with the factfinder." *W. Des Moines State Bank v. Hawkeye Bancorporation*, 722 F.2d 411, 414 (8th Cir. 1983).

Doc. No. 209 at 47-48. TN Warranty then made the following argument in its reply:

Plaintiffs also fail to explain how their state law claims are not preempted, given the case law that says federal law preempts Iowa state law for trademark claims "involving interstate commerce," as this case clearly does, or how those state law claims can survive if their federal claims do not. Plaintiffs point to putative state law claims for punitive damages, but even if those claims were not preempted, which they are, they cannot survive absent a viable compensatory damage claim, which Plaintiffs lack. In any event, those punitive damage claims fail for the same lack of evidence that Plaintiffs' federal claims for profits and fees do.

· · · ·

In the Eighth Circuit, the Lanham Act preempts state trademark law as applied to interstate commerce. In *United States Jaycees v. Commodities Magazine, Inc.*, 661 F. Supp. 1360, 1367 (N.D. Iowa 1986), this Court held that Iowa state trademark law "would conflict with one of the major goals of the Lanham Act—uniformity—if it was applied to goods in interstate commerce." *Id.* at 1367. "Thus, to the extent that Iowa Code § 548.11 regulates interstate commerce, it is preempted by the Lanham Act.["] *Id.* (citing *Comidas Exquisitos, Inc. v. Carlos McGee's Mexican Cafe, Inc.*, 602 F. Supp. 191, 198 (S.D. Iowa 1985), *aff'd*, 775 F.2d 260 (8th Cir. 1986) (same); and *Sargent & Co. v. Welco Feed Mfg. Co.*, 195

F.2d 929, 935 (8th Cir. 1952) (Lanham Act preempts state law in cases involving interstate commerce). In their complaint, Plaintiffs allege that TrueNorth has offices and clients throughout the United States. (Doc. 132 ¶ 12.) They also allege that both TrueNorth and TNWarranty use their marks "in commerce" and that TNWarranty "markets and sells its services using the marks that are the subject of this lawsuit throughout the United States, including in Iowa." (*Id.* 132 ¶¶ 7, 13, 58).) For this reason alone, Plaintiffs state law trademark claims, which Plaintiffs seek to apply to trademark use and allegedly infringing acts in interstate commerce, are preempted.

Doc. No. 234 at 15-16, 85-86.

As evidenced from the parties' briefing, TN Warranty's argument regarding preemption shifted based on other issues that were developing related to TN Warranty's motion to strike TrueNorth's jury demand. *See* Doc. Nos. 213, 215. I did not allow TrueNorth to supplement its resistance related to TN Warranty's reply argument concerning punitive damages because TN Warranty had not sought summary judgment on that issue in its initial brief. *See* Doc. No. 252.

With regard to Count VI (Unfair Competition Under Iowa and Federal Common Law), I concluded as follows:

With regard to TrueNorth's claims for infringement or use of allegedly similar marks under common law, TN Warranty argues these claims fail for the same reasons as the Lanham Act claims. Doc. No. 180 at 76 (citing *Marshalltown Trowel Co. v. Walton Tool Co.*, No. 4-98-90565, 2000 WL 33361990, at *1 (S.D. Iowa 2000) (treating Lanham Act claim and claim of unfair competition in violation of Iowa common law as one given that the elements were identical and the Iowa Supreme Court looks to the Lanham Act to interpret Iowa common law)); *see also Basic Chems., Inc. v. Benson*, 251 N.W.2d 220, 231-32 (Iowa 1977) (a plaintiff must show a likelihood of confusion to sustain a common law claim of unfair competition). TrueNorth argue that the common law claims should prevail for the same reasons as its Lanham Act claims.

TrueNorth's claim of unfair competition under common law is based on trademark infringement and false advertising. TrueNorth need not have

17

a registered mark in Iowa in order to assert infringement under common law. *See Commercial Sav. Bank v. Hawkeye Fed. Sav. Bank*, 592 N.W.2d 321, 327 (Iowa 1999) (noting that trademarks are a form of common-law property right and "[r]egistration of trademarks is therefore not a prerequisite to protection from infringement."). Under Iowa law, a plaintiff must prove (1) it has a valid trademark and (2) infringement by the defendant to prove trademark infringement. *See Community State Bank, Nat. Ass'n v. Community State Bank*, 758 N.W.2d 520, 525 (Iowa 2008). Proof of infringement is based on the same six factors as under the Lanham Act. *Id.* at 527. Because I have found that TrueNorth's claims of trademark infringement, false designation of origin and unfair competition should go to trial, TrueNorth's claim of unfair competition based on trademark infringement under federal and state common law also survives summary judgment. However, TrueNorth's common law unfair competition claim based on false advertising fails for the same reason as its false advertising claim under the Lanham Act.

Doc. No. 266 at 89-90.

Because I did not directly address TN Warranty's preemption argument, I will do here. Preemption generally involves a question of law, and thus may be decided at the pleadings stage. *See Brinkley v. Pfizer, Inc.*, 772 F.3d 1133, 1139 (8th Cir. 2014) (affirming dismissal of implied warranty and design defect claims as preempted by the FDCA on a motion for judgment on the pleadings). Preemption arises under the Supremacy Clause, which "states that the laws of the United States made pursuant to the Constitution are the 'supreme Law of the Land.'" *Wuebker v. Wilbur-Ellis Co.*, 418 F.3d 883, 886 (8th Cir. 2005) (quoting U.S. Const., art. VI). "Thus state law that conflicts with federal law has no effect." *Jones v. Vilsack*, 272 F.3d 1030, 1033 (8th Cir. 2001) (citing *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981)).

There are three types of preemption – express, field and conflict preemption. *Id.* Express preemption occurs when Congress expressly forbids state regulation. *Id.* Field preemption occurs when Congress "creates a scheme of federal regulation so pervasive that the only reasonable inference is that it meant to displace the states." *Id.* Conflict preemption occurs "when a law enacted by [Congress] directly conflicts with state law."

*Id.* Only the third option applies here. *See Int'l Franchise Ass'n, Inc. v. City of Seattle*, 803 F.3d 389, 409 (9th Cir. 2015) ("As the Lanham Act does not expressly preempt state law, and courts have said that it does not occupy the field, the ordinance can only be preempted if it conflicts with the Lanham Act.") (internal citations omitted);

TN Warranty's argument is based, in large part, on a case out of this district, which held that the Lanham Act preempts Iowa's dilution statute. The court stated:

> In providing greater rights to holders of trademarks than are available to them under the Lanham Act, [the Iowa statute] and various other state dilution statutes, frustrate 'the accomplishment and execution of the full purposes and objectives of Congress' . . . by supplanting the uniform and definite rights contained in the Lanham Act, which are intended for those who trade in interstate commerce, with a checkerboard of differing rights . . . . The Iowa statute would conflict with one of the major goals of the Lanham Act – uniformity – if it were applied to goods in interstate commerce. Thus, to the extent that [the anti-dilution statute] regulates interstate commerce, it is preempted by the Lanham Act.

*United States Jaycees*, 661 F. Supp. at 1367-68. That case and *Comidas Exquisitos, Inc.*, cited *Sargent* for the proposition that "the Lanham Act has pre-empted state trademark law as applied to interstate commerce." *See Comidas Exquisitos, Inc.*, 602 F. Supp. at 198. In *Sargent*, the Eighth Circuit observed that the parties' operations were interstate. It stated: "Congress has entered and pre-empted the field of trade-mark law in its application to interstate commerce." *Sargent & Co. v. Welco Feed Mfg. Co.*, 195 F.2d 929, 935 (8th Cir. 1952).[8] This statement has led to much confusion in the Eighth Circuit

---

[8] *Sargent* involved a dispute over the phrase "Mineral and Meal" between two Iowa corporations. *Sargent*, 195 F.2d at 930. Sargent had registered the trade name "Minral Meat Meal" with the State of Iowa under Iowa Code Chapter 548 and with the United States Patent Office under the Trade-Mark Act of March 19, 1920. *Id.* Welco produced products in which the words "Mineral and Meal" were prominently displayed. Sargent alleged infringement on their registered trademarks and unfair competition under common law. *Id.* at 932. The trial court found there was no confusion or reasonable probability of confusion and dismissed the complaints. On

on this issue and is inconsistent with the majority of courts.

For instance, *Comidas Exquisitos* also cited *Mister Donut of Am., Inc. v. Mr. Donut, Inc.*, 418 F.2d 838, 844 (9th Cir. 1969) for the same proposition that the Lanham Act preempts state law as applied to interstate commerce, but the Ninth Circuit rejected the "Mister Donut dicta" in *Golden Door, Inc. v. Odisho*, 646 F.2d 347, 352 (9th Cir. 1980). The Ninth Circuit relied on the following reasoning by the Third Circuit:

> Where conflict is alleged between federal and state law, the specific purpose of the federal act must be ascertained in order to assess any potential erosion of the federal plan by operation of the state law. The limited intent of Congress in enacting the Lanham Act is thus crucial to the discussion in the present case. Within the ambit of its intended operation, the Lanham Act expresses a Congressional design to legislate so that the public can buy with confidence, and the trademark holder will not be pirated. If state law would permit confusing or deceptive trademarks to operate, infringing on the guarantee of exclusive use to federal trademark holders, then the state law would, under the Supremacy Clause, be invalid . . . .

*Golden Door, Inc.*, 646 F.2d at 352 (quoting *Mariniello v. Shell Oil Co.*, 511 F.2d 853, 858 (3d Cir. 1975)). The *Golden Door* court concluded: "By extending to federal registrants greater protection than is available under the Lanham Act, California law, like the Act, protects both the public from confusion about the services and products it is receiving and the public relations investment of plaintiff." *Id.* Therefore, the Third and Ninth Circuits concluded the Lanham Act preempts only state laws that would provide

---

appeal, the Eighth Circuit considered whether the Iowa Code gave plaintiffs rights and remedies in addition to those afforded by common law and the trademark laws of the United States. *Id.* at 935. In considering this question, the court noted that "Congress has entered and pre-empted the field of trade-mark law in its application to interstate commerce." *Id.* The court concluded it would apply only federal law and noted that with regard to the unfair competition claim, the common law of Iowa did not appear to differ in any respect to the common law generally applied to questions of unfair competition. *Id.* It concluded that pleading the Iowa statute did not enlarge plaintiffs' rights. *Id.*

less protection than the Lanham Act.[9] *See also Kerzner Intern. Ltd. v. Monarch Casino & Resort, Inc.*, 675 F. Supp. 2d 1029, 1048 (D. Nev. 2009) ("The Lanham Act does not have broad preclusive effect; rather, it only preempts state laws which would provide less protection than the Lanham Act, and thus would permit federal trademarks to be infringed).[10] As stated another way, a state law can be preempted by the Lanham Act only if it conflicts with it. *See Int'l Franchise Ass'n, Inc.*, 803 F.3d at 409 (noting local ordinance could only be preempted if it conflicted with the Lanham Act). This means that if the state and federal law are equivalent, there is no preemption issue. *See Bates v. Dow Agrosciences, LLC*, 544 U.S. 431, 447 (2015) (concluding that a state-law labeling requirement that was equivalent to and fully consistent with federal law was not preempted); *Pinsonneault v. St. Jude Med., Inc.*, 953 F. Supp. 2d 1006, 1013-14 (D. Minn. 2013) (explaining that in the context of the FDCA, a plaintiff's state law claim based on conduct that also violates the FDCA is not preempted as long as the claim is

---

[9] The court in *Jaycees* held the opposite. *United States Jaycees*, 661 F. Supp. at 1367 ("In providing greater rights to holders of trademarks than are available to them under the Lanham Act, Iowa Code § 548.11 and other various state dilution statues frustrate . . . the accomplishment and execution of the full purposes and objectives of Congress . . . by supplanting the uniform and definite rights contained in the Lanham Act, which are intended for those who trade in interstate commerce, with a checkerboard of differing rights.") (internal quotations and citations omitted).

[10] The court in *Kerzner* provided the following helpful example:

> [T]he obtaining of a state registration does not necessarily reserve the whole state for the state registrant as a matter of federal law; rather, the state's registrant's rights would yield before those of a federal registrant, except in the exact territory the state registrant had continuously used the mark prior to the federal registrant's constructive use date.

*Kerzner Intern. Ltd.*, 675 F. Supp. 2d at 1048 (citing 15 U.S.C. § 1115(b)(5) and 4 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, § 22.2 (4th ed. 2009).

identical or genuinely equivalent to a duty under federal law).

Multiple courts have followed suit and agree that state law claims and Lanham Act claims can coexist. *See Attrezzi, LLC v. Maytag Corp.*, 436 F.3d 32, 42 (1st Cir. 2006) ("But it is accepted that Congress did not prohibit state unfair competition statutes that might have *substantive* terms somewhat more favorable to plaintiffs than the Lanham Act.") (emphasis in original);[11] *Plasticolor Molded Prods. v. Ford Motor Co.*, 713 F. Supp. 1329, 1345 (C.D. Cal. 1989) *vacated on other grounds* 767 F. Supp. 1036 (C.D. Cal. 1991) (noting that the Lanham Act "serves the goal of national uniformity by providing a nationwide floor, assuring the public and trademark owners at least a minimum level of protection."); *Storer Cable Comm'cns v. City of Montgomery, Ala.*, 806 F. Supp. 1518, 1540 (M.D. Ala. 1992) ("[T]he Lanham Act sets a protective floor only and does not interfere with state laws which provide additional trademark protection. The act preempts only those state laws which directly conflict with its provisions or purposes by permitting an erosion of trademark rights."); *Emerson Power Transmission Corp. v. Roller Bearing Co. of Am., Inc.*, 922 F. Supp. 1306, 1313 (N.D. Ind. 1996) ("[T]he Lanham Act generally does not preempt state regulation of trademarks, whether statutory or at common law."); *Gateway 2000, Inc. v. Cyrix Corp.*, 942 F. Supp. 985, 993 (D.N.J. 1996) ("The Lanham Act does not have a preemptive effect over state regulation of trademark law.") (citing cases).

Given that the majority of courts disagree with *Sargent* and the Eighth Circuit subsequently acknowledged in *Tonka Corp.* that state law and Lanham Act claims can co-exist, I decline to find that the Lanham Act preempts the unfair competition claim

---

[11] *Attrezzi* cited *Tonka Corp. v. Tonk-A-Phone, Inc.*, 805 F.2d 793, 794-95 (8th Cir. 1986) for the proposition that state law remedies for trademark infringement are not preempted by the Lanham Act. *See Tonka Corp.*, 805 F.2d at 794-95 ("We are not persuaded that the state law conflicts with the federal scheme of trademark regulation under the Lanham Act and we therefore conclude the district court did not err in determining that Tonk-A-Phone's use of the 'Tonka' trademark and name met the criteria for an award of fees under the [Minnesota Deceptive Trade Practices Act].").

under state law here merely because the parties have interstate operations. As stated in my prior order (Doc. No. 266), an unfair competition claim based on trademark infringement under Iowa common law mirrors the elements of a trademark infringement claim under the Lanham Act. In other words, this claim is coextensive with the Lanham Act claim and not in conflict with it. *See McCarthy on Trademarks and Unfair Competition*, § 22.2 (5th ed.) ("In general, federal and state trademark and unfair competition law can coexist and cooperate without conflict."); *Kelley Blue Book v. Car-Smarts, Inc.*, 802 F. Supp. 278, 289 (C.D. Cal. 1992) (noting that Lanham Act and California law of unfair competition are "substantially congruent"). Because TrueNorth's claim of unfair competition based on trademark infringement under Iowa law does not conflict with the Lanham Act, I find TN Warranty's preemption argument to be without merit.[12]

## C.   *Appeal of Judge Mahoney's Order on Motion to Strike*

TN Warranty appeals Judge Mahoney's order (Doc. No. 250) granting in part TrueNorth's motion for a jury trial on Count VI as to TrueNorth's state law claim for unfair competition seeking punitive damages. TN Warranty contends that TrueNorth is not entitled to a jury trial on that claim and that punitive damages are barred as a matter of law based on the preemption argument discussed above and because TrueNorth has

---

[12] I also note that while TN Warranty's preemption argument was not explicitly directed at TrueNorth's claim for punitive damages, courts have found that the remedial aspect of state law infringement claims is also not preempted by the Lanham Act. *See JCW Invests., Inc. v. Novelty, Inc.*, 482 F.3d 910, 918-19 (7th Cir. 2007) (concluding that because "the Lanham Act has not been interpreted as a statute with broad preemptive reach," state law remedies (including punitive damages) remain available for non-federal trademark infringement claims). Therefore, I reject TN Warranty's preemption argument as to Count VI generally and as a basis for finding punitive damages are not available as a matter of law.

not alleged actual damages.[13]

TrueNorth argues that Judge Mahoney applied the proper standards under Rule 39(b), including the Eighth Circuit's five factors in determining whether a party should receive a jury trial despite its failure to make a timely demand under Rule 39(a). *See* Doc. No. 277 at 3-4. TrueNorth argues that TN Warranty misconstrues the standard and misapplies the rules in an attempt to get its punitive damages argument in front of the court, despite its failure to raise such an argument in its motion for summary judgment.

Judge Mahoney began her analysis by noting that under Federal Rule of Civil Procedure 38(d), a party waives its Seventh Amendment right to a jury trial by failing to timely demand one, but that under Rule 39(b), the court has discretion to excuse the failure to make a timely jury demand. *See* Doc. No. 250 at 17. She then considered the following five factors that district courts in the Eighth Circuit have used in determining whether to excuse a failure to make a timely jury demand:

    (1)    whether the case involves issues [that] are best tried to a jury;
    (2)    whether granting the motion would result in a disruption of the Court's schedule or that of an adverse party;
    (3)    the degree of prejudice to the adverse party;
    (4)    the length of the delay in having requested a jury trial; and
    (5)    the reason for the movant's tardiness in requesting a jury trial.

*Id.* at 18 (quoting *Freeborn v. Mak*, 270 F. Supp. 2d 1064, 1066-67 (S.D. Iowa 2003)).

Judge Mahoney concluded that TrueNorth's state-law claim for unfair competition seeking punitive damages is best tried to a jury. She noted that allowing an untimely jury demand would not cause scheduling disruption and that TrueNorth had made a timely jury demand as to other counts. Moreover, the parties and court had blocked off their calendars for a scheduled jury trial in this case. *Id.* at 19. She also noted that the parties had conducted discovery in this case with a jury trial in mind, which lessened the

---

[13] Judge Mahoney did not address this issue, concluding it was a dispositive issue reserved for the district court. *See* Doc. No. 250 at 19.

prejudice of an untimely demand.  *Id.*  Judge Mahoney acknowledged that TrueNorth's unfair competition claim had been pending for more than a year before it sought to demand a jury trial as to that claim.  However, she found the length of the delay did not weigh as heavily against TrueNorth as it would have if TrueNorth had not demanded a jury trial on any counts.  *Id.* at 20.  Finally, she credited TrueNorth's assertion that it inadvertently neglected to update the language of its jury demand to include the additional counts in its amended complaint.  *Id.*  While this factor weighed against excusing the failure, she noted that district courts in the Eighth Circuit have excused an untimely jury demand under Rule 39(b) despite this last factor weighing against it.  *Id.*  She noted that if I find TrueNorth is not entitled to punitive damages as a matter of law, TrueNorth should not have the right to jury trial on any of its claims.[14]  *Id.*

With regard to TN Warranty's argument that punitive damages are barred as a matter of law,[15] this argument is procedurally flawed as Judge Mahoney did not make a decision on that issue and concluded it was a dispositive matter for the district court to resolve.  TN Warranty did not make this argument in its motion for summary judgment.

---

[14] Judge Mahoney granted TN Warranty's motion to strike TrueNorth's jury demand as to Counts I through V, finding those claims were equitable in nature and did not include a claim for actual damages.  *See* Doc. No. 250 at 17, n.9.

[15] TN Warranty's argument on this point is two-fold: (1) TrueNorth's state law unfair competition claim (including punitive damages) is preempted by the Lanham Act and (2) TrueNorth is precluded from seeking punitive damages because it has no claim for actual damages.  *See* Doc. No. 274 at 7-8.  While Judge Mahoney granted TN Warranty's motion to strike TrueNorth's jury demand as to Counts I-V based on a finding that those claims did not include a claim for actual damages, she did not make this finding for purposes of determining whether TrueNorth was precluded from seeking punitive damages.  *See* Doc. No. 250 at 17, n.9 ("If the district court determines there is evidence of actual damages (and TrueNorth has not forfeited such a remedy), then TrueNorth would be entitled to a jury trial on liability and the amount of damages, as well as 'common issues of fact' between the legal and equitable claims"), at 19 (declining to decide issue of whether TrueNorth is entitled to punitive damages as a matter of law).

*See* Doc. No. 180. Indeed, I did not allow TrueNorth to supplement its resistance to TN Warranty's motion for summary judgment after TN Warranty raised the punitive damages issue in its briefing on its motion to strike TrueNorth's jury demand and in its resistance to TrueNorth's motion for a jury trial on Count VI. *See* Doc. No. 252 ("Defendant did not seek summary judgment on the punitive damages claim in its motion (Doc. No. 180). While the parties briefly addressed it in their resistance and reply briefs, I find that defendant did not properly raise the issue and, in any event, it was not fully briefed for purposes of defendant's summary judgment motion."). I even stated that my ruling on TN Warranty's motion for summary judgment would not address TrueNorth's claim for punitive damages. *Id.* Given that Judge Mahoney (understandably) did not decide this issue, I decline to review it as part of an appeal of Judge Mahoney's order.[16]

Turning to the issue of whether TrueNorth's failure to make a timely jury demand on Count VI should be excused, I find that Judge Mahoney correctly identified the rule and the five factors applicable to this issue. TN Warranty argues Judge Mahoney placed too much emphasis on the first three factors, particularly the fifth factor – prejudice – and not enough emphasis on TrueNorth's reason for missing the deadline, which it contends is the most important factor. *See* Doc. No. 274 at 4-5 (citing *Lowry v. McDonnell Douglas Corp.*, 211 F.3d 457, 463 (8th Cir. 2000)). TN Warranty argues that when placing proper weight on that factor, TrueNorth's 16-month tardiness should not be excused. *Id.* at 6. Moreover, it argues that the prejudice is not "lessened" as Judge Mahoney noted based on the parties expecting a jury trial throughout discovery because the consequences of allowing a jury trial as to Count VI include two separate trials resulting in additional cost and expense.

TrueNorth points out that TN Warranty's argument regarding the misapplication of the five-factor standard is based on the entirely different concept of excusable neglect

---

[16] TN Warranty has raised this issue in its motion (Doc. No. 263) in limine, which will be addressed in a separate order.

for purposes of Federal Rule of Appellate Procedure 4(a)(5). Doc. No. 277 at 4 (citing *Lowry*, 211 F.3d at 463). It notes that *Lowry* addressed whether a party met the excusable neglect standard required to forgive an untimely notice of appeal. This standard requires consideration of four factors. Of course, under this standard, prejudice and length of delay do not weigh heavily because the rule requires the motion to be filed within 30 days of the last day for filing a timely notice of appeal. *See Lowry*, 211 F.3d at 463 ("But then it seems that the delay always will be minimal in actual if not relative terms, and the prejudice to the non-movant will often be negligible, since the Rule requires a 4(a)(5) motion to be filed within thirty days of the last day for filing a timely notice of appeal."). TrueNorth agrees that in the context of a notice of appeal, the reason for the delay is the factor carrying the greatest import, but the same is not true in the context of a motion for a jury trial under Rule 39(b). It notes that courts have often granted Rule 39(b) motions when the failure to make a timely jury demand is the result of an honest mistake or inadvertence. *See* Doc. No. 277 at 5 (citing Charles Alan Wright et al., *Federal Practice & Procedure* § 2334 (3d ed.)). TrueNorth argues Judge Mahoney properly exercised her discretion in determining that TrueNorth's untimely jury demand should be excused.

With regard to the claimed prejudice to TN Warranty, TrueNorth argues that TN Warranty mistakenly asserts that allowing a jury trial as to Count VI will result in two trials. It states that in its experience, when the court hears a case involving both legal and equitable claims with some claims tried to a jury and some to the court, the court holds one trial and considers the same evidence presented to the jury. Moreover, it argues that the type of prejudice identified by TN Warranty (the additional expense associated with a jury trial) is not the type of relevant prejudice related to a belated request for a jury trial. *See* Doc. No. 277 at 6 (noting, for example, that the proper type of prejudice would include conducting discovery as though preparing for a bench trial). TrueNorth notes that that type of prejudice does not exist here because, as noted by Judge Mahoney, the parties have proceeded as though the case would be tried to a jury. *Id.*

Finally, TrueNorth notes that TN Warranty does not challenge Judge Mahoney's analysis as to the first two factors: whether the punitive damages unfair competition claim is one best tried to a jury or whether a jury trial would affect the court's or the parties' schedules. Overall, TrueNorth argues that Judge Mahoney properly applied the five factors in excusing TrueNorth's belated jury demand.

Rule 39(b) provides: "Issues on which a jury trial is not properly demanded are to be tried by the court. But the court may, on motion, order a jury trial on any issue for which a jury might have been demanded." Fed. R. Civ. P. 39(b). Judge Mahoney correctly identified the following five factors relevant to this dispute:

(1) whether the case involves issues [that] are best tried to a jury;
(2) whether granting the motion would result in a disruption of the Court's schedule or that of an adverse party;
(3) the degree of prejudice to the adverse party;
(4) the length of the delay in having requested a jury trial; and
(5) the reason for the movant's tardiness in requesting a jury trial.

*Freeborn*, 270 F. Supp. 2d at 1066-67. While TN Warranty does not appear to contest that the first two factors weigh in favor of excusing a late jury demand, I note that that conclusion is also supported by the law and the facts in this case. Count VI, alleges, in part, a state common law claim of unfair competition based on trademark infringement and seeks punitive damages – a legal remedy. *See Tiffany and Co. v. Costco Wholesale Corp.*, 127 F. Supp. 3d 241, 263 (S.D.N.Y. 2015) ("The Court finds that Tiffany's punitive damages claim is triable to a jury because it involves particular allegations of willfulness on Costco's part that require resolution by a jury."); *Curtis v. Loether*, 415 U.S. 189, 196 (1974) ("More important, the relief sought here – actual and punitive damages – is the traditional form of relief offered in the courts of law."). While TN Warranty's motion (Doc. No. 263) in limine argues that punitive damages are barred as a matter of law based, in part, on a lack of actual damages, I find that on its face, Count VI (the state-law unfair competition claim seeking punitive damages) is a claim best tried

to a jury. The record also reflects that the parties have proceeded through the majority of this case (until TN Warranty's motion to strike TrueNorth's jury demand) as though TrueNorth's claims would be tried to a jury.

With regard to prejudice, I agree with TrueNorth that the prejudice must result from the late jury demand, not merely from having to try the case to a jury. Because the parties have conducted discovery as though they would try all claims to a jury, I find little to no degree of prejudice to TN Warranty. *See also Littlefield v. Fort Dodge Messenger*, 614 F.2d 581, 585 (8th Cir. 1980) (noting that "jury trial ought to be liberally granted when no prejudice results"). While TrueNorth's delay in requesting a trial was significant, the length appears to be due to an oversight when it filed its second amended complaint, not because of some improper motive. As Judge Mahoney noted, failure to make a timely jury demand due to inadvertence has been excused by other courts. *See* Doc. No. 250 at 20 (citing Charles Alan Wright et al, *Federal Practice & Procedure* § 2334 (3d ed.) (collecting cases)).

In sum, I agree with Judge Mahoney that TrueNorth's failure to make a timely jury demand should be excused under Rule 39(b). As alleged, TrueNorth's state law unfair competition claim seeking punitive damages (included in Count VI) should be tried to a jury as well as any "common issues of fact" between its legal and equitable claims. *See Goettsch v. Goettsch*, 29 F. Supp. 3d 1231, 1237 (N.D. Iowa 2014). Of course, this ruling is subject to my finding on whether TrueNorth is, in fact, entitled to seek punitive damages.

## IV. CONCLUSION

For the reasons set forth herein:

1.      TN Global's motion (Doc. No. 271) to dismiss for lack of personal jurisdiction is **granted**. TN Global is hereby **dismissed** as a party to this suit.

2.     TN Warranty's appeal (Doc. No. 274) from Judge Mahoney's order (Doc. No. 250) granting TrueNorth's motion to make an untimely jury demand is **denied.**

3.     TN Warranty's motion (Doc. No. 295) seeking reconsideration/clarification of my order (Doc. No. 266) on its motion for summary judgment is **granted in part** and **denied in part**.  It is **denied** to the extent that it seeks reconsideration of the prior summary judgment order.  However, it is **granted** to the extent that this order provides clarification regarding TN Warranty's preemption argument.

**IT IS SO ORDERED.**

**DATED** this 5th day of November, 2019.

_____
Leonard T. Strand, Chief Judge